**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HEALTH FREEDOM DEFENSE FUND, INC., a Wyoming Not-for-Profit Corporation; JEFFREY FUENTES; SANDRA GARCIA; HOVHANNES SAPONGHIAN; NORMA BRAMBILA; CALIFORNIA EDUCATORS FOR MEDICAL FREEDOM, | No. 22-55908<br><br>D.C. No.<br>2:21-cv-08688-DSF-PVC |
| *Plaintiffs-Appellants*, | |
| v. | OPINION |
| ALBERTO CARVALHO, in his official capacity as Superintendent of the Los Angeles Unified School District; ILEANA DAVALOS, in her official capacity as Chief Human Resources Officer for the Los Angeles School District; GEORGE MCKENNA; MONICA GARCIA; SCOTT SCHMERELSON; NICK MELVOIN; JACKIE GOLDBERG; KELLY GONEZ; TANYA ORTIZ FRANKLIN, in their official capacities as members of the Los Angeles Unified School District governing board, | |

*Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted En Banc March 18, 2025
San Francisco, California

Filed July 31, 2025

Before:  Mary H. Murguia, Chief Judge, and Kim McLane
Wardlaw, Consuelo M. Callahan, John B. Owens, Mark J.
Bennett, Bridget S. Bade, Daniel P. Collins, Kenneth K.
Lee, Danielle J. Forrest, Salvador Mendoza, Jr. and Roopali
H. Desai, Circuit Judges.

Opinion by Judge Bennett;
Dissent by Judge Owens;
Partial Dissent by Judge Lee

## SUMMARY[*]

### COVID-19 Vaccination Policy

The en banc court affirmed the district court's judgment
on the pleadings in favor of the Los Angeles Unified School

---

[*] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

District (LAUSD) in an action brought pursuant to 42 U.S.C. § 1983 alleging that LAUSD's COVID-19 vaccination policy (the Policy), which required all employees to be fully vaccinated, violated plaintiffs' substantive due process and equal protection rights.

Plaintiffs alleged that the Policy violated their fundamental right to bodily integrity in refusing medical treatment because COVID-19 vaccines are therapeutic treatments that reduce symptoms but do not prevent infection or transmission and additionally pose significant health risks to the recipients. Plaintiffs also alleged that the Policy violated their right to equal protection because it arbitrarily classifies employees based on their vaccination status.

As a threshold issue, the en banc court held that this case was not moot. Although LAUSD rescinded the Policy shortly after oral argument before the three-judge panel, the court could still grant effective relief by ordering reinstatement of the individual plaintiffs who remain terminated from their original positions under the Policy.

On the merits, the en banc court, joining all the sister circuits that have considered substantive due process challenges to COVID-19 vaccine mandates, held that the Policy was subject to rational basis review because *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), which upheld a smallpox vaccine mandate, remains binding. *Jacobson* holds that the constitutionality of a vaccine mandate, like the Policy here, turns on what reasonable legislative and executive decisionmakers could have rationally concluded about whether a vaccine protects the public's health and safety, not whether a vaccine actually provides immunity to or prevents transmission of a disease.

The Policy survives such review, as the LAUSD could have reasonably concluded that COVID-19 vaccines would protect the health and safety of its employees and students. For this reason, plaintiffs' equal protection claim also failed under rational basis review. The en banc court therefore affirmed the district court's order granting LAUSD's motion for judgment on the pleadings.

Dissenting, Judge Owens wrote that the court lacks jurisdiction because the case is moot, given that there is no longer any policy for the court to enjoin or declare unlawful. Nothing in the record (or the world) even hints at the possibility that LAUSD would resurrect its COVID-19 vaccine mandate. The majority's assertion that the complaint's boilerplate language fairly encompassed a request for employment reinstatement did not survive close inspection.

Dissenting in part, Judge Lee, joined by Judge Collins, wrote that although he agrees that the case is not moot, he believes that the court should not affirm the dismissal of this lawsuit without permitting the plaintiffs to offer evidence to rebut government officials' far-reaching claims. Contrary to the majority, he read the Supreme Court's decision in *Jacobson* as applying only if a vaccine prevents the transmission and contraction of a disease. The plaintiffs here plausibly claimed—at least at the pleading stage—that the COVID-19 vaccine mitigates serious symptoms but does not "prevent transmission or contraction of COVID-19." And if that is true, then *Jacobson*'s rational basis review does not apply, and the court must examine the vaccine mandate under a more stringent standard of review. Ultimately, the plaintiffs may be wrong about the COVID-19 vaccine, but they should be given a chance to challenge the government's assertions about it.

## COUNSEL

Scott J. Street (argued) and John W. Howard, JW Howard Attorneys Ltd., San Diego, California; George R. Wentz Jr., The Davillier Law Group LLC, New Orleans, Louisiana; for Plaintiffs-Appellants.

Keith A. Jacoby (argued) and Connie L. Michaels, Littler Mendelson PC, Los Angeles, California; Carrie A. Stringham, Littler Mendelson PC, San Diego, California; for Defendants-Appellees.

Leigh A. Salmon, Senior Assistant Attorney General; Benjamin Gutman, Solicitor General; Dan Rayfield, Attorney General; State of Oregon, Salem, Oregon; Rob Bonta, Attorney General, State of California, San Francisco, California; Kathleen Jennings, Attorney General, State of Delaware, Wilmington, Delaware; Kwame Raoul, Attorney General, State of Illinois, Chicago, Illinois; William Tong, Attorney General, State of Connecticut, Hartford, Connecticut; Anne E. Lopez, Attorney General, State of Hawaiʻi, Honolulu, Hawaiʻi; Anthony G. Brown, Attorney General, State of Maryland, Baltimore, Maryland; Andrea J. Campbell, Attorney General, Commonwealth of Massachusetts, Boston, Massachusetts; Keith Ellison, Attorney General, State of Minnesota, St. Paul, Minnesota; Raul Torrez, Attorney General, State of New Mexico, Santa Fe, New Mexico; Charity R. Clark, Attorney General, Office of the Vermont Attorney General, Montpelier, Vermont; Brian L. Schwalb, Attorney General, District of Columbia, Washington, D.C.; Peter F. Neronha, Attorney General, State of Rhode Island, Providence, Rhode Island; Dana Nessel, Attorney General, State of Michigan; Lansing, Michigan; Matthew J. Platkin, Attorney General, State of New Jersey, Trenton, New Jersey; Letitia James, Attorney

General, Office of the New York State Attorney General, Albany, New York; Nicholas W. Brown, Attorney General, State of Washington, Olympia, Washington; Edward E. Manibusan, Attorney General, Commonwealth of the Northern Mariana Islands, Saipan, Northern Mariana Islands; for Amici Curiae States of Oregon, California, Connecticut, Delaware, Hawai'i, Illinois, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, New York, Rhode Island, Vermont, and Washington, and the District of Columbia, and the Commonwealth of the Northern Mariana Islands.

Sloan R. Simmons, Alyssa R. Bivins, and Ryan I. Ichinaga, Lozano Smith LLP, Sacramento, California; Kristin Lindgren-Bruzzone, California School Boards Association's Education Legal Alliance, West Sacramento, California; for Amicus Curiae California School Boards Association's Education Legal Alliance.

Gregory Dolin, Mark Chenoweth, and Jenin Younes, New Civil Liberties Alliance, Arlington, Virginia, for Amicus Curiae New Civil Liberties Alliance.

## OPINION

BENNETT, Circuit Judge:

This case concerns the Los Angeles Unified School District's ("LAUSD") COVID-19 vaccination policy ("Policy"), which essentially required all of its employees to be fully vaccinated.  As relevant here, Plaintiffs[1] filed suit under 42 U.S.C. § 1983, claiming that the Policy violated their Fourteenth Amendment substantive due process and equal protection rights.  The district court granted judgment on the pleadings to the LAUSD.[2]  Plaintiffs appeal.  We have jurisdiction under 28 U.S.C. § 1291 and affirm.

As a threshold issue, this case is not moot.  Although the LAUSD rescinded the Policy shortly after oral argument before the three-judge panel, a court could still grant effective relief by ordering reinstatement of the individual Plaintiffs who remain terminated from their original positions under the Policy.

On the merits, we hold that the Policy is subject to rational basis review because *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), is binding and controls.  The Policy survives such review, as the LAUSD could have reasonably concluded that COVID-19 vaccines would protect the health and safety of its employees and students.  For this reason, Plaintiffs' equal protection claim also fails under rational

---

[1] "Plaintiffs" are the Health Freedom Defense Fund, California Educators for Medical Freedom, and certain individuals who are or were employed by the LAUSD.

[2] Defendants are LAUSD employees and board members, named in their official capacities.  For simplicity, we refer to defendants collectively as the "LAUSD."

basis review.  We therefore affirm the district court's order granting the LAUSD's motion for judgment on the pleadings.

## BACKGROUND AND PROCEDURAL HISTORY[3]

On January 30, 2020, the World Health Organization declared COVID-19 a public health emergency.  The next day, President Trump and the Secretary of Health and Human Services ("Secretary") declared COVID-19 a public health emergency.  These emergency declarations were renewed and extended into at least 2021.  In February 2021, President Biden extended the emergency declaration because more than "500,000 people in th[e] Nation ha[d] perished from the disease."  The Secretary renewed his emergency declaration in January, April, and July 2021.

On August 13, 2021, the LAUSD issued the Policy challenged here.  The Policy established a mandatory vaccination requirement for all LAUSD employees.  Under the Policy, employees had to be fully vaccinated[4] against COVID-19 by October 15, 2021.  The Policy allowed employees to apply for religious or medical exemptions.  But even "exempt" employees were excludable from the

---

[3] These facts are based on the allegations in the operative second amended complaint, which we accept as true and construe in Plaintiffs' favor.  *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  We also consider documents incorporated into the complaint by reference. *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021).  We GRANT Plaintiffs' motion to take judicial notice that the LAUSD voted to withdraw the Policy on September 26, 2023.  Dkt. No. 46.

[4] The Policy defines "fully-vaccinated" as having "received the first and second doses of the vaccine (or, in the case of Johnson & Johnson, the single required dose) and [having] completed the two-week period that follows to ensure maximum immunity."

workplace "[i]f a risk to the health and safety of others [could not] be reduced to an acceptable level through a workplace accommodation."  The Policy explained that its purpose was to "provide the safest possible environment in which to learn and work."

At the time the LAUSD issued the Policy, health experts had been recommending that individuals get COVID-19 vaccinations and had been reporting that such vaccinations are effective in preventing and spreading the disease.  For example, the U.S. Centers for Disease Control and Prevention ("CDC") reported that COVID-19 vaccines "are highly effective at protecting vaccinated people against symptomatic and severe COVID-19," and "[f]ully vaccinated people are less likely to become infected" and "less likely to get and spread SARS-CoV-2." *Interim Public Health Recommendations for Fully Vaccinated People*, CDC (July 28, 2021), https://stacks.cdc.gov/view/cdc/108355 [https://perma.cc/AMW8-KH3Z].  The director of the CDC reiterated that COVID-19 vaccines prevent "severe illness and death."  Madeline Holcombe & Christina Maxouris, *Fully Vaccinated People Who Get a Covid-19 Breakthrough Infection Can Transmit the Virus, CDC Chief Says*, CNN Health (Aug. 6, 2021), https://edition.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html [https://perma.cc/Z5RV-UPLR].  Other experts urged that "[g]etting more people vaccinated . . . w[ould] help prevent other—potentially even more aggressive—variants from arising in the future." *Id.* A former CDC director explained that "outbreaks . . . w[ould] not be as explosive in areas with higher vaccination coverage." *Id.*  And a children's hospital

president characterized "adult vaccination" as a "simple solution" to protect children from COVID-19.  *Id.*

After the LAUSD issued the Policy, health experts continued to urge the public to get vaccinated.  Indeed, the CDC reported that "[v]accines remain the best public health measure to protect people from COVID-19, slow transmission, and reduce the likelihood of new variants emerging."  *Omicron Variant: What You Need to Know*, CDC         (Dec.         9,         2021), https://stacks.cdc.gov/view/cdc/112430 [https://perma.cc/B4EG-5QMR].  The CDC recommended that "everyone 5 years and older protect themselves from COVID-19 by getting fully vaccinated."  *Id.*

In November 2021, Plaintiffs filed this suit challenging the Policy.  The operative second amended complaint ("SAC") alleges that, under the Policy, the LAUSD threatened to terminate employees who failed to get the COVID-19 vaccination.  According to the SAC, the LAUSD terminated at least two of the individual Plaintiffs based on their refusal to get vaccinated.

Although the SAC asserts several state and federal law claims, the only claims before us are Plaintiffs' Fourteenth Amendment substantive due process and equal protection claims brought under 42 U.S.C. § 1983.  As to their due process claim, Plaintiffs allege that the Policy violates their fundamental right to bodily integrity in refusing medical treatment, as the vaccines are "therapeutic treatments for COVID and not vaccines at all."  According to Plaintiffs, COVID-19 vaccines do not prevent infection or transmission of COVID-19.  Instead, the vaccines "only reduce symptoms of those who are infected by COVID," and thus they are medical "treatments" and not traditional vaccines.  The SAC

also alleges that the COVID-19 vaccines "cause a significantly higher incidence of injuries, adverse reactions, and deaths than any prior vaccines that have been allowed to remain on the market, and, therefore, pose a significant health risk to recipients."

Plaintiffs also claim that the Policy violates their right to equal protection because it arbitrarily classifies employees based on their vaccination status. The SAC alleges that vaccinated and unvaccinated employees are similarly situated because both groups can be infected with and transmit COVID-19. Thus, in Plaintiffs' view, the Policy arbitrarily treats the unvaccinated differently.

In terms of relief, the SAC seeks "[t]emporary, preliminary, and permanent injunctive relief restraining [the LAUSD] from enforcing" the Policy. It also contains a general prayer for relief for "such other and further relief as the Court may deem just and proper."

The LAUSD moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), and the district court granted the motion in September 2022. The court determined that, under *Jacobson*, the substantive due process claim failed because the Policy did not violate any fundamental right and survived rational basis review. The district court also decided that the equal protection claim failed under rational basis review. The district court's order permitted Plaintiffs to amend their equal protection and ADA claims. Plaintiffs declined to do so and instead timely appealed.

A divided three-judge panel of our court vacated the district court's order and remanded. *Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 718 (9th Cir. 2024), *vacated and reh'g en banc granted*, 127 F.4th 750 (9th Cir.

2025).  Before addressing the merits, the panel considered whether the case had become moot in light of the LAUSD's recent recission of the Policy (twelve days after oral argument).  *Id.* at 721–22.  Applying the voluntary cessation exception to mootness, the panel majority determined that the case was not moot because the LAUSD had failed to show it was reasonably clear that the Policy would not be reinstated.**[5]**  *Id.* at 722–24.  Judge Hawkins dissented from the majority's mootness determination.  *Id.* at 728–32 (Hawkins, J., dissenting).  In his view, the case was moot "[b]ecause there [wa]s no longer any policy for the court to enjoin or declare unlawful."  *Id.* at 732 (Hawkins, J., dissenting).

On the merits, the panel majority held that the district court erred in applying *Jacobson*.  *Id.* at 724–25.  The majority reasoned that *Jacobson* did not apply, much less control, because it addressed only those vaccines that provide immunity and prevent transmission.  *Id.*  Because Plaintiffs alleged that COVID-19 vaccines, unlike traditional vaccines, do not provide immunity and prevent transmission (and the court must accept those allegations as true at the judgment-on-the-pleadings stage), the panel majority held that *Jacobson* did not apply.  *Id.*  Therefore, the panel vacated the district court's order and remanded for further proceedings.  *Id.* at 725.

---

[5] *See Rosemere Neighborhood Ass'n v. EPA*, 581 F.3d 1169, 1173 (9th Cir. 2009) ("Under [the voluntary cessation exception to mootness], the mere cessation of illegal activity in response to pending litigation does not moot a case, unless the party alleging mootness can show that the 'allegedly wrongful behavior could not reasonably be expected to recur.'" (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000))).

The LAUSD petitioned for rehearing en banc. Dkt. No. 56. While it continued to urge that the case was moot, the LAUSD also argued that the three-judge panel had misapplied *Jacobson*, creating a conflict with our sister circuits. *Id.* at 13–17. A majority of our active judges voted to rehear this case en banc, and we vacated the three-judge panel opinion. *Health Freedom*, 127 F.4th 750.

## STANDARD OF REVIEW

"We review de novo an order granting a Rule 12(c) motion for judgment on the pleadings. We must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citation omitted). Along with the complaint, we may also consider documents incorporated into the complaint by reference and matters of which we may take judicial notice. *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming*, 581 F.3d at 925.

## DISCUSSION

## I.

We first explain why this case is not moot even though the Policy has been rescinded. "The test for mootness of an appeal is whether the appellate court can give the [plaintiff] *any* effective relief in the event that it decides the matter on the merits in his favor. If it can grant such relief, the matter is not moot." *Garcia v. Lawn*, 805 F.2d 1400, 1402 (9th Cir. 1986) (emphasis added). In the context of injunctive relief, a case is not moot if the court is able to "undo" the effects of

the alleged illegal action. *Id.*; *see, e.g.*, *id.* ("The question [of mootness] thus becomes whether we can now give [plaintiff] effective relief which would 'undo' the effects of the alleged retaliatory action . . . .").

The SAC seeks "injunctive relief restraining [the LAUSD] from enforcing the [Policy]" and "other and further relief as the Court may deem just and proper." The SAC also alleges that one of the individual Plaintiffs was terminated from employment by the LAUSD for refusing to be vaccinated and another was "separated from his employment with LAUSD" after objecting to being vaccinated. There is no suggestion that these individuals have been reinstated,[6] and so construing these allegations in Plaintiffs' favor, *see Fleming*, 581 F.3d at 925, we accept that these individuals remain terminated from their original positions.

Given the SAC's broad request for *any* proper injunctive relief, along with the allegations that individual Plaintiffs have been terminated under the Policy and have not been reinstated to their prior positions, the SAC fairly encompasses a request for reinstatement. *See Garcia*, 805 F.2d at 1402–04 (noting that reinstatement to a prior position can be a proper injunctive remedy). Because reinstatement would undo some effects of the alleged illegal action—the LAUSD's enforcement of the Policy—a court could grant effective relief despite the Policy's rescission.[7] Thus, this

---

[6] Indeed, during en banc oral argument, Plaintiffs' counsel represented that at least one individual remains terminated from his original full-time position. Oral Arg. at 1:47–2:12.

[7] During en banc oral argument, Plaintiffs' counsel confirmed that if the case were remanded, Plaintiffs would explicitly seek reinstatement for all the individual Plaintiffs who have not been reinstated to their former positions. Oral Arg. at 52:14–52:25.

case is not moot.[8]  *See id.* at 1402–03 (holding, in an action seeking an injunction, that the case was not moot because the court could order reinstatement of the plaintiff to his prior position); *see also Norris v. Stanley*, 73 F.4th 431, 433 n.1 (6th Cir. 2023) (holding, in similar circumstances, that the case was not moot despite rescission of the vaccine policy at issue because, among other reasons, there was no "indication that [the university] ha[d] undone any of the negative employment actions faced by [some of the plaintiffs], so the harm plaintiffs faced ha[d] not been removed"), *cert. denied*, 144 S. Ct. 1353 (2024).

Our precedent supports that this case is not moot.  In *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059 (9th Cir. 2002), the plaintiffs sought an injunction to stop a timber sale on national forest land.  *Id.* at 1064–65. Although the timber sale had been completed, we held that the case was not moot because the alleged "harm to old growth species may yet be remedied by any number of mitigation strategies." *Id.* at 1066.  Significantly, we held that such mitigation measures were fairly requested in the complaint because "[i]n addition to an injunction, [the plaintiffs'] complaint request[ed] 'such further relief as may

---

[8] For this reason, the LAUSD's motion to dismiss is DENIED, Dkt. No. 49, and we need not (and do not) decide whether the voluntary cessation exception to mootness applies.  We also need not address whether our recent decision in *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) (en banc), *cert. denied*, 144 S. Ct. 1465 (2024), would permit Plaintiffs to seek damages against the LAUSD.  *See Health Freedom*, 104 F.4th at 726–27 (R. Nelson, J., concurring) (opining that *Kohn* may conflict with our precedent holding that California school districts have sovereign immunity under the Eleventh Amendment); *id.* at 727 n.2 (R. Nelson, J., concurring) ("If LAUSD does not have sovereign immunity, Plaintiffs may be able to amend to raise a monetary claim, which would be another reason this case is not moot.").

be necessary and appropriate to avoid further irreparable harm.'" *Id.* In so holding, we noted that our prior case law had recognized that we "may construe such requests for [other appropriate] relief 'broadly to avoid mootness.'" *Id.* (quoting *Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015 n.6 (9th Cir. 1989)); *see also Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 957 F.3d 1024, 1032 n.7 (9th Cir. 2020) (explaining that, even though the complaint "ask[ed] for injunctive relief only with respect to claims that [were] not on appeal," "we c[ould] consider further injunctive relief in deciding whether th[e] appeal [wa]s moot" because the complaint "also request[ed] 'any such further relief as requested by the Plaintiffs or as this Court deems just and proper'" (citing *Neighbors of Cuddy Mountain*, 303 F.3d at 1066)).[9]

---

[9] Judge Owens's dissent argues that *Neighbors of Cuddy Mountain*'s mootness rationale should be limited to "the narrow context of [National Forest Management Act] and [National Environmental Policy Act] violations." Owens Dissent at 33. But we do not read *Neighbors of Cuddy Mountain* as suggesting such a limitation. *See* 303 F.3d at 1065–66. Indeed, in *Neighbors of Cuddy Mountain*, our mootness analysis derived from the generally applicable and longstanding principle that "a case is moot only where no effective relief for the alleged violation can be given." *Id.* at 1065; *see also Garcia*, 805 F.2d at 1402 (noting that "[t]he test for mootness of an appeal"—"whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor"—"goes back at least to" the Supreme Court's decision in *Mills v. Green*, 159 U.S. 651 (1895)).

We also note that our conclusion that this case is not moot is consistent with *Z Channel Limited Partnership v. Home Box Office, Inc.*, 931 F.2d 1338 (9th Cir. 1991). Federal Rule of Civil Procedure 54(c) provides that a final judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." In *Z Channel*, "[t]he only relief expressly requested [in the

Contrary to Judge Owens's suggestion in his dissent, *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997), does not undermine our conclusion that this case is not moot. In *Arizonans for Official English*, the Supreme Court noted that we had held that the case was not moot because the plaintiff's broad request for "other relief" could encompass a request for nominal damages. *Id.* at 60 (quoting *Yniguez v. Arizona*, 975 F.2d 646, 647 n.1 (9th Cir. 1992) (per curiam)). The Supreme Court reversed that holding— but not because we relied on the broad request for other relief. Rather, the Supreme Court reversed because it would have been *impossible* for the plaintiff there to seek nominal damages against the state under 42 U.S.C. § 1983. *Id.* at 69 ("[T]he claim for relief the Ninth Circuit found sufficient to overcome mootness was *nonexistent* [because] . . . § 1983 creates no remedy against a State." (emphasis added)). But here, reinstatement of the individual Plaintiffs to their original positions is not impossible. *See Doe v. Lawrence Livermore Nat'l Lab'y*, 131 F.3d 836, 839–42 (9th Cir. 1997) (holding that a request for reinstatement of employment is a request for prospective injunctive relief that

---

complaint] . . . was declaratory and injunctive relief," and such relief had become "clearly moot" on appeal. 931 F.2d at 1340. Applying Rule 54(c), we held that the unavailability of declaratory and injunctive relief did not moot the case because, even though the plaintiff had not expressly requested relief in the form of damages in its complaint, a court could nonetheless award damages as a form of relief. *Id.* at 1340–41; *see also Walden v. Bodley*, 39 U.S. (14 Pet.) 156, 164 (1840) ("Under [a] general prayer for relief, the [c]ourt [in equity] will often extend relief beyond the specific prayer, and not exactly in accordance with it.").

falls within the *Ex parte Young* exception to Eleventh Amendment immunity).[10]

## II.

### A.

The Due Process Clause of the Fourteenth Amendment includes "a substantive component that protects certain individual liberties from state interference." *Mullins v. Oregon*, 57 F.3d 789, 793 (9th Cir. 1995). "Only those

---

[10] Respectfully, we also disagree with Judge Owens's dissent because it is based on the incorrect premise that our holding rests only on the SAC's broad request for relief. Owens Dissent at 30–31. We also see no violation of the party presentation rule. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation."). As previously explained, Plaintiffs themselves fairly raised a request for reinstatement in the SAC.

"We have noted in cases involving questions of mootness that ordinary discretionary principles of waiver and forfeiture can affect whether certain relief is available." *United States v. Yepez*, 108 F.4th 1093, 1099 n.1 (9th Cir. 2024); *see Bain v. Cal. Tchrs. Ass'n*, 891 F.3d 1206, 1212 (9th Cir. 2018) (holding that the plaintiffs' "eleventh hour" request for damages was an attempt "to transform their lawsuit from a request for prospective equitable relief into a plea for money damages to remedy past wrongs"); *Seven Words LLC v. Network Sols.*, 260 F.3d 1089, 1095 (9th Cir. 2001) (holding that the plaintiff's belated request for damages had been "effectively disavowed . . . for tactical reasons"). But Plaintiffs here have neither waived nor forfeited their request for reinstatement to their prior positions. Throughout this case (which was dismissed at the pleadings stage), the gravamen of the relief sought by Plaintiffs has been prospective injunctive relief to permit them to continue to work for the LAUSD without also having to comply with the Policy. For this reason, we also believe that the out-of-circuit and rescinded-COVID-19-policy cases relied upon by Judge Owens are inapt. *See* Owens Dissent at 31–32, 31 n.1. In none of those cases did the courts find that they could still grant effective injunctive relief consistent with the gravamen of the injunctive relief sought by the respective plaintiffs all along.

aspects of liberty that we as a society traditionally have protected as fundamental are included within the substantive protection of the Due Process Clause." *Id.* When no fundamental liberty interest is implicated, a legislative act "must satisfy only the deferential rational basis standard of review." *Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*, 880 F.3d 450, 455 (9th Cir.), *amended by* 881 F.3d 792 (9th Cir. 2018). Under that standard, we "merely look to see whether the government *could* have had a legitimate reason for acting as it did." *Dittman v. California*, 191 F.3d 1020, 1031 (9th Cir. 1999) (quoting *Halverson v. Skagit County*, 42 F.3d 1257, 1262 (9th Cir. 1994), *amended on denial of reh'g* (9th Cir. Feb. 9, 1995)). "Rational basis review is highly deferential to the government, allowing any conceivable rational basis to suffice." *Erotic Serv. Provider*, 880 F.3d at 457.

Like all our sister circuits that have considered substantive due process challenges to COVID-19 vaccine mandates, we hold that *Jacobson* controls our analysis. *See We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293–94 (2d Cir.) (per curiam) (applying *Jacobson* to plaintiffs' claim that a COVID-19 vaccine mandate "violate[d] their fundamental rights to privacy, medical freedom, and bodily autonomy under the Fourteenth Amendment"), *clarified*, 17 F.4th 368 (2d Cir. 2021); *Child.'s Health Def., Inc. v. Rutgers, The State Univ. of N.J.*, 93 F.4th 66 (3d Cir.) (holding that "*Jacobson* control[led]," *id.* at 80, plaintiffs' claim that a COVID-19 vaccine mandate "violated their substantive due process rights under the Fourteenth Amendment," *id.* at 78), *cert. denied*, 144 S. Ct. 2688 (2024); *Norris*, 73 F.4th at 435 (applying *Jacobson* to plaintiffs' substantive due process challenge to a COVID-19 vaccine mandate); *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th

592, 593 (7th Cir. 2021) (holding that, because the court "must apply the law established by the Supreme Court," *Jacobson* applied to plaintiffs' substantive due process claim challenging a COVID-19 vaccine mandate); *see also Antunes v. Becerra*, No. 22-2190, 2024 WL 511038, at *1 (4th Cir. Feb. 9, 2024) (per curiam) (adopting the district court's decision in *Antunes v. Rector & Visitors of Univ. of Va.*, 627 F. Supp. 3d 553 (W.D. Va. 2022), which applied *Jacobson* in rejecting plaintiff's claim that a COVID-19 vaccine mandate violated her due process right to refuse unwanted medical treatment, *id.* at 564–65), *cert. denied*, 145 S. Ct. 159 (2024); *Brox v. Hole*, 83 F.4th 87, 100–01 (1st Cir. 2023) (applying *Jacobson*'s rational basis test to a due process challenge to a COVID-19 vaccination mandate (based on plaintiffs' failure to challenge the application of the rational basis test) and holding that the mandate easily satisfied rational basis review).

In *Jacobson*, the Supreme Court considered a substantive due process challenge to a smallpox vaccination requirement for all adult residents of Cambridge, Massachusetts, with criminal penalties. 197 U.S. at 12–14. The Massachusetts legislature provided that certain municipalities could require vaccinations, if the board of health of a municipality determined that "in its opinion, it [wa]s necessary for the public health or safety . . . [to] require and enforce the vaccination and revaccination of all [its] inhabitants." *Id.* at 12. The Board of Health of the City of Cambridge adopted the following regulation in the face of a health emergency:

> Whereas, smallpox has been prevalent to some extent in the city of Cambridge, and still continues to increase; and whereas, it is

> necessary for the speedy extermination of the disease that all persons not protected by vaccination should be vaccinated; and whereas, in the opinion of the board, the public health and safety require the vaccination or revaccination of all the inhabitants of Cambridge; be it ordered, that all the inhabitants of the city who have not been successfully vaccinated since March 1st, 1897, be vaccinated or revaccinated.

*Id.* at 12–13.

Jacobson, who had been convicted for refusing to get vaccinated for smallpox in violation of the Cambridge regulation, *id.* at 14, argued that the statute was "hostile to the inherent right of every freeman to care for his own body and health in such way as to him seems best," *id.* at 26. He claimed, among other things, that the vaccine resulted in "injurious or dangerous effects." *Id.* at 23.

The Court first explained that state legislatures and other policymakers have the authority to enforce "reasonable [laws] . . . as will protect the public health and the public safety," like vaccination requirements. *Id.* at 25. But because such laws remain subject to the Constitution of the United States, the Court next considered whether the statute violated a right to bodily integrity secured by the Constitution. *Id.* at 25–26; *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 24 (2020) (per curiam) (Gorsuch, J., concurring) ("Mr. Jacobson claimed that he possessed an implied 'substantive due process' right to 'bodily integrity' that emanated from the Fourteenth Amendment . . . ."). The Court determined that the Constitution secured no fundamental right to be free from

vaccine requirements imposed to protect the safety and health of the community. *Jacobson*, 197 U.S. at 26–27. And the Court stressed that whether a vaccine requirement would protect the safety and health of the community is a matter for the legislature or policymakers, not a question for a court or jury. *Id.* at 30 ("It is no part of the function of a court or a jury to determine which one of two modes was likely to be the most effective for the protection of the public against disease. That was for the legislative department to determine in the light of all the information it had or could obtain.").

Having determined that Jacobson had no fundamental right to refuse the vaccination, the Court essentially applied rational basis review to his due process challenge. *Id.* at 31 ("[But] if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."); *see also Roman Cath. Diocese*, 592 U.S. at 23 (Gorsuch, J., concurring) ("Although *Jacobson* pre-dated the modern tiers of scrutiny, this Court essentially applied rational basis review to Henning Jacobson's challenge . . . ."). Because the state legislature and the Cambridge Board of Health could have reasonably concluded that requiring adults to get the smallpox vaccine would protect the public's health and safety, the Court held that it survived rational basis review. *Jacobson*, 197 U.S. at 30–31 (explaining that the legislature could have found that the vaccine requirement "was likely to be the most effective for the protection of the public against disease," *id.* at 30); *id.* at 38 ("[The Court] do[es] not perceive that this [regulation] has invaded any right secured by the Federal Constitution.").

*Jacobson* holds that the constitutionality of a vaccine mandate, like the Policy here, turns on what reasonable legislative and executive decisionmakers *could* have rationally concluded about whether a vaccine protects the public's health and safety, not whether a vaccine actually provides immunity to or prevents transmission of a disease. Whether a vaccine protects the public's health and safety is committed to policymakers, not a court or a jury.  Further, alleged scientific uncertainty over a vaccine's efficacy is irrelevant under *Jacobson*.  *Jacobson* simply does not allow debate *in the courts* over whether a mandated vaccine prevents the spread of disease.  *Jacobson* makes clear that it is up to the political branches, within the parameters of rational basis review, to decide whether a vaccine effectively protects public health and safety.

*Jacobson* is materially indistinguishable from this case. Here, as in *Jacobson*, we are presented with a bodily integrity substantive due process challenge to a vaccine mandate imposed to protect the public's health and safety in response to a health emergency.  Thus, under *Jacobson*, we must apply rational basis review.

The Policy easily survives such review because (even assuming the truth of Plaintiffs' allegations) it was more than reasonable for the LAUSD to conclude that COVID-19 vaccines would protect the health and safety of its employees and students.  The SAC concedes that COVID-19 vaccines "lessen the severity of symptoms for individuals who receive them."  From this, the LAUSD could have reasonably determined that the vaccines would protect the health of its employees.  And as discussed above, the LAUSD could have reasonably concluded, based on information in the documents incorporated by reference into the SAC, that COVID-19 vaccines would protect the health and safety of

its students and employees. In fact, the CDC reported that COVID-19 vaccines "are highly effective at protecting vaccinated people against symptomatic and severe COVID-19," and "[f]ully vaccinated people are less likely to become infected" and "less likely to get and spread SARS-CoV-2." *Interim Public Health Recommendations for Fully Vaccinated People*, CDC (July 28, 2021), https://stacks.cdc.gov/view/cdc/108355 [https://perma.cc/AMW8-KH3Z]. The CDC also recommended that "everyone 5 years and older protect themselves from COVID-19 by getting fully vaccinated." *Omicron Variant: What You Need to Know*, CDC (Dec. 9, 2021), https://stacks.cdc.gov/view/cdc/112430 [https://perma.cc/B4EG-5QMR].

**B.**

We reject Plaintiffs' attempt to limit *Jacobson* to only those vaccines that prevent the spread of a disease and provide immunity. *Jacobson* required no such findings. The Court dealt with arguments very similar to Plaintiffs' about the nature of vaccines, including through offers of proof made by Jacobson on which he sought to introduce expert testimony:

> Looking at the propositions embodied in the defendant's rejected offers of proof, it is clear that they are more formidable by their number than by their inherent value. Those offers in the main seem to have had no purpose except to state the general theory of those of the medical profession who attach little or no value to vaccination as a means of preventing the spread of smallpox, or who think that vaccination causes other diseases

of the body.  What everybody knows the court must know, and therefore the state court judicially knew, as this court knows, that an opposite theory accords with the common belief, and is maintained by high medical authority.  We must assume that, when the statute in question was passed, the legislature of Massachusetts was not unaware of these opposing theories, and was compelled, of necessity, to choose between them.  It was not compelled to commit a matter involving the public health and safety to the final decision of a court or jury.  It is no part of the function of a court or a jury to determine which one of two modes was likely to be the most effective for the protection of the public against disease.    That was for the legislative department to determine in the light of all the information it had or could obtain.  It could not properly abdicate its function to guard the public health and safety.  The state legislature proceeded upon the theory which recognized vaccination as at least an effective, if not the best-known, way in which to meet and suppress the evils of a smallpox epidemic that imperiled an entire population.  Upon what sound principles as to the relations existing between the different departments of government can the court review this action of the legislature?  If there is any such power in the judiciary to review legislative action in respect of a matter affecting the general welfare, it can only be when that which the

legislature has done comes within the rule that, if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.

Whatever may be thought of the expediency of this statute, it cannot be affirmed to be, beyond question, in palpable conflict with the Constitution. Nor, in view of the methods employed to stamp out the disease of smallpox, can anyone confidently assert that the means prescribed by the state to that end has no real or substantial relation to the protection of the public health and the public safety.

197 U.S. at 30–31 (citations omitted).

As this discussion demonstrates, the Court determined that Jacobson's claims about the smallpox vaccine—very similar to Plaintiffs' claims—were immaterial, given the other evidence from which the legislature could have reasonably concluded that the vaccine would likely protect the health and safety of the public.[11] *Jacobson* thus applies

---

[11] For this reason, we respectfully disagree with Judge Lee's attempt to limit *Jacobson* "to apply only if a vaccine prevents transmission and contraction of a disease." Lee Partial Dissent at 35. By rejecting Jacobson's argument—supported by offers of proof—that the smallpox

to vaccination requirements regardless of whether such vaccines actually provide immunity and prevent the spread of disease or whether they provide no immunity and merely render COVID-19 less dangerous to those who contract it, so long as policymakers could reasonably conclude that the vaccines would protect the public's health and safety.[12]

We also reject Plaintiffs' argument that a heightened standard of review applies based on a more recent line of cases that, according to Plaintiffs, recognize a fundamental right to refuse unwanted medical treatment. Plaintiffs primarily rely on *Cruzan ex rel. Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990) (stating that "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment," *id.* at 278), and *Washington v. Glucksberg*, 521 U.S. 702 (1997) (noting that the Court "ha[s] also assumed, and strongly suggested, that the Due Process Clause protects the traditional right to refuse unwanted lifesaving medical treatment," *id.* at 720 (citing *Cruzan*, 497 U.S. at 278–79)).

---

vaccine did not prevent the spread of the disease, the Court necessarily held that whether the vaccine actually prevented the spread of smallpox did not matter, given the contrary evidence from which policymakers could reasonably conclude that the vaccine would protect the public's health and safety. *See Jacobson*, 197 U.S. at 30–31; *see also Child.'s Health Def.*, 93 F.4th at 79 ("*Jacobson* did not turn on the longevity of the vaccine or consensus regarding its efficacy."). *Jacobson* cannot be cabined to circumstances that the Court found immaterial.

[12] Even if the SAC plausibly alleged that COVID-19 vaccines do not effectively provide immunity or prevent the spread of COVID-19 and that they only reduce symptoms for the recipient, that would be irrelevant. What matters is whether policymakers could reasonably conclude that vaccination requirements are necessary to protect public health and safety. *Jacobson*, 197 U.S. at 30–31.

Whatever the reach of these cases, they did not overrule *Jacobson*.**[13]**  *See We The Patriots USA*, 17 F.4th at 293 n.35 ("*Jacobson* remains binding precedent."); *Norris*, 73 F.4th at 436 ("[A]bsent any indication from the [Supreme] Court that *Jacobson* is to be overruled or limited, [the court is] bound to apply that decision to reject plaintiffs' arguments here.").  Indeed, even Plaintiffs do not go so far as to claim that *Jacobson* is no longer good law.  As *Jacobson* remains binding and squarely governs this case, we must apply it.

## III.

Plaintiffs concede, and we agree, that their equal protection claim is subject to rational basis review.  *See Hooks v. Clark Cnty. Sch. Dist.*, 228 F.3d 1036, 1041 (9th Cir. 2000) ("To withstand [a due process or equal protection challenge under the] Fourteenth Amendment . . . , a regulation must bear only a rational relation to a legitimate

---

[13] Moreover, these cases do not address the circumstances addressed in *Jacobson*: a due process challenge to a vaccine policy imposed to protect the public's health and safety.  So we do not read these cases as undermining *Jacobson*.  But even if we did, we would still need to apply *Jacobson*.  *See In re Twelve Grand Jury Subpoenas*, 908 F.3d 525, 529 (9th Cir. 2018) (per curiam) ("Where Supreme Court precedent 'has direct application in a case,' the Supreme Court has instructed 'the Court of Appeals [to] follow the case which directly controls,' even if it 'appears to rest on reasons rejected in some other line of decisions,' and thereby to 'leav[e] to th[e] Court the prerogative of overruling its own decisions.'" (alterations in original) (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997))).  We thus agree with our sister circuits that, despite *Cruzan* and its progeny, *Jacobson* continues to control in cases challenging COVID-19 vaccination policies.  *See We The Patriots USA*, 17 F.4th at 293–94 (rejecting plaintiffs' argument that *Jacobson* did not apply because *Cruzan* and its progeny recognized a fundamental right to refuse medical treatment); *Child.'s Health Def.*, 93 F.4th at 79–80 (same); *Norris*, 73 F.4th at 437 (same).

governmental purpose, unless the regulation implicates a fundamental right or an inherently suspect classification."). Because we hold above that the Policy is rationally related to the LAUSD's legitimate interest in protecting the health and safety of its employees and students, Plaintiffs' equal protection claim fails.

## CONCLUSION

Although the LAUSD has rescinded the Policy, this case is not moot. Given the SAC's broad request for any proper injunctive relief along with its allegations that individual Plaintiffs were terminated under the Policy, the SAC fairly encompasses a request for reinstatement of the individual Plaintiffs who have not been restored to their prior positions.

On the merits, *Jacobson* is binding and controls, and thus rational basis review applies to Plaintiffs' substantive due process claim. Even construing Plaintiffs' allegations in their favor, the Policy survives such review, as the LAUSD could have reasonably concluded that COVID-19 vaccines would protect the health and safety of its employees and students. For this same reason, Plaintiffs' equal protection claim fails under rational basis review. We therefore affirm the district court's order granting the LAUSD's motion for judgment on the pleadings.

**AFFIRMED.**

OWENS, Circuit Judge, dissenting.

Plaintiffs brought this suit to obtain "injunctive relief restraining Defendants from enforcing" their vaccine policy. As Judge Hawkins correctly concluded in his dissent from the panel decision, this case is moot, as "there is no longer any policy for the court to enjoin or declare unlawful." *Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 732 (9th Cir. 2024) (Hawkins, J., dissenting), *vacated and reh'g en banc granted*, 127 F.4th 750 (9th Cir. 2025). Nothing in the record (or the world) even hints at the possibility that the Los Angeles Unified School District would resurrect its COVID-19 vaccine mandate, which has been dead for nearly two years. The majority does not dispute this reality. We lack Article III jurisdiction and must dismiss this case. *See Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022) (en banc) (dismissing a challenge to a pandemic-related restriction as moot in line with "the numerous other circuit courts across the country" that have done the same).

The majority first attempts to skirt the mootness problem by asserting that the complaint "fairly encompasses a request for reinstatement," leaning on a boilerplate catchall request for "other and further relief as the Court may deem just and proper." Maj. Op. at 14. Yet when unanimously reversing our court on mootness grounds, the Supreme Court warned that new forms of relief, "extracted late in the day from [a] general prayer for relief and asserted solely to avoid otherwise certain mootness, bore close inspection." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71 (1997) (rejecting this court's theory that a live controversy existed where the "complaint did not expressly request nominal damages" but "it did request 'all other relief that the Court deems just and proper'" (citation omitted)). Indeed, the

Court has distinguished cases where a plaintiff "has presented a claim" for the type of relief that "ensure[s] a live controversy," *Mission Prod. Holdings v. Tempnology, LLC*, 587 U.S. 370, 377 (2019), from those where a plaintiff "ha[s] not prayed for" such relief and thus "no longer ha[s] a legally cognizable interest in the result of th[e] case," *Murphy v. Hunt*, 455 U.S. 478, 491 (1982); *cf. United States v. Sineneng-Smith*, 590 U.S. 371, 380 (2020) (unanimously reversing this court and applying the party presentation principle to require that cases be "shaped by the parties," not the court).

Not surprisingly, our sister circuits routinely reject attempts to grow a magic Article III jurisdiction beanstalk from boilerplate language. For example, the First Circuit, in a nearly identical rescinded COVID-19 mandate case, cited *Arizonans for Official English* to hold that "the students' request for 'any other relief [the] Court deems proper' cannot operate to save their otherwise moot action." *Harris v. Univ. of Mass.*, 43 F.4th 187, 193 (1st Cir. 2022).[1]  The

---

[1] *See, e.g.*, *Thomas R.W. v. Mass. Dep't of Educ.*, 130 F.3d 477, 480 (1st Cir. 1997) (holding that a "general prayer for relief" cannot preserve a request for damages to avoid mootness, citing *Arizonans for Official English*); *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 141 (2d Cir. 1994) (declining to "read a damages claim into the Complaint's boilerplate prayer" for relief when there was "absolutely no specific mention in [the Complaint] of nominal damages" (citation omitted)); *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 90 (2d Cir. 2005) (applying *Arizonans for Official English* to reject that a "general claim for 'other such relief as the Court deems appropriate' is sufficiently expansive to include" the only relief that would render the case not moot); *WildEarth Guardians v. Pub. Serv. Co.*, 690 F.3d 1174, 1191 (10th Cir. 2012) (holding that "[a] broad request for 'other' relief cannot save [a] complaint" from mootness); *Harris v. City of Houston*,

majority attempts to distinguish the many contrary precedents from other circuits by asserting that, unlike in those cases, relief consistent with the "gravamen" of Plaintiffs' requested injunction—even if not expressly sought—can still be granted. Maj. Op. at 18 n.10. But the mootness inquiry hinges on the relief "specific[ally] mention[ed]" by the parties, not on the court's post hoc characterization of the case's supposed essence. *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 141 (2d Cir. 1994). Blindly embracing a never briefed or argued theory that the Supreme Court and our sister circuits have explicitly rejected is more Inspector Clouseau than "close inspection."

To side shuffle this constitutional black hole, the majority departs from the many analogous challenges to rescinded COVID-19 policies that have been dismissed as moot, *see Brach*, 38 F.4th at 12 n.3 (collecting cases), and instead relies on *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059 (9th Cir. 2002), which concerned alleged violations of the National Forest Management Act (NFMA) and the National Environmental Policy Act (NEPA). Maj. Op. at 15-16.[2] In that case, plaintiffs sought to enjoin a timber sale on national forest land or any other relief that "may be necessary and appropriate to avoid further irreparable harm" from the sale. *Id*. at 1066. Even after

---

151 F.3d 186, 191 (5th Cir. 1998) (declining to "conjure up relief" by "'read[ing] into' [the] complaint additional requests" that would manufacture a live controversy).

[2] The majority also cites *Norris v. Stanley*, 73 F.4th 431 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 1353 (2024)—another pandemic-related case that it claims involves "similar circumstances" and was not moot. Maj. Op. at 15. Unlike here, however, the plaintiffs in *Norris* specifically "sought nominal damages for the alleged violations of their constitutional rights." *Id*. at 433 n.1.

logging of the timber concluded, we held over a dissent that the case was not moot because further environmental harm from the sale "may yet be remedied by any number of mitigation strategies," which were fairly encompassed in the requested relief. *Id.*

The parties never cited *Neighbors of Cuddy Mountain* nor its underlying theory in their many briefs submitted to this court, nor did the original panel or dissent. And despite the majority's claim that *Neighbors of Cuddy Mountain* derived from longstanding mootness principles, Maj. Op. at 16 n.9, no published decision in this circuit—or any other— has ever relied on *Neighbors of Cuddy Mountain*'s mootness rationale outside the narrow context of NFMA and NEPA violations. That collective silence speaks for itself: There is simply no basis to extend *Neighbors of Cuddy Mountain*'s mootness holding beyond its specific environmental context to the claims presented here. *Compare Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (citing *Neighbors of Cuddy Mountain* and similar cases to illustrate this court's recognition of "'live' controversies *in environmental cases* even after the contested government projects were complete" (emphasis added)), *with Brach*, 38 F.4th at 11 (holding that, where plaintiffs sue to enjoin a pandemic policy but the policy no longer remains, the plaintiffs "have gotten everything they asked for" and the "actual controversy has evaporated," presenting a "classic case" of mootness).[3]

---

[3] The majority's tepid reliance on *Z Channel Limited Partnership v. Home Box Office, Inc.*, 931 F.2d 1338 (9th Cir. 1991)—a nearly thirty-five-year-old case that was also never cited by the parties nor the original panel—is even less persuasive. Maj. Op. at 16 n.9. No published

Because neither of the majority's last-minute mootness rationales survive "close inspection," *Arizonans for Off. Eng.*, 520 U.S. at 71, I respectfully dissent for the reasons stated by Judge Hawkins.

---

LEE, Circuit Judge, joined by COLLINS, Circuit Judge, dissenting in part.

The majority's opinion comes perilously close to giving the government carte blanche to require a vaccine or even medical treatment against people's will so long as it asserts—even if incorrectly—that it would promote "public health and safety." But the many mistakes and missteps by our government and the scientific establishment over the past five years counsel caution: Their errors underscore the importance of carefully evaluating the sort of sweeping claims of public-health authority asserted by the Los Angeles Unified School District ("LAUSD") here. Faithful adherence to Supreme Court precedent confirms that we

---

decision from this circuit in nearly three decades has relied on *Z Channel* to overcome a mootness challenge based on hypothetical relief that no party specifically sought. And for good reason: *Z Channel* is a textbook example of overreach, with the majority "[d]efying a clear rule of procedure, creating an inter-circuit conflict and resurrecting a legal theory long ago abandoned by the parties" to bring the case "back from the dead." 931 F.2d at 1346, 1349 (Kozinski, J., dissenting); *see also Sineng-Smith*, 590 U.S. at 380 (cautioning against appellate courts "interject[ing]" themselves into cases); *NAACP v. U.S. Sugar Corp.*, 84 F.3d 1432, 1438 (D.C. Cir. 1996) (citing the *Z Channel* dissent); *Seven Words LLC v. Network Sols.*, 260 F.3d 1089, 1095–97 (9th Cir. 2001) (declining to apply *Z Channel* to overcome a mootness challenge); *Bain v. Cal. Tchrs. Ass'n*, 891 F.3d 1206, 1212 (9th Cir. 2018) (declining to "transform" the requested relief "at the eleventh hour" to avoid mootness, citing *Seven Words* and *Arizonans for Official English*).

should not blindly accept the mere say-so of the government. We thus should not affirm the dismissal of this lawsuit challenging LAUSD's COVID-19 vaccine mandate—without permitting the plaintiffs to offer evidence to rebut the government officials' far-reaching claims.[1]

Contrary to the majority, I read the Supreme Court's decision in *Jacobson v. Massachusetts*—which upheld a smallpox vaccine mandate—to apply only if a vaccine prevents transmission and contraction of a disease. 197 U.S. 11 (1905). The plaintiffs here have plausibly claimed—at least at the pleading stage where we must accept the truth of the allegations—that the COVID-19 vaccine mitigates serious symptoms but does not "prevent transmission or contraction of COVID-19." And if that is true, then *Jacobson*'s rational basis review does not apply, and we must examine the vaccine mandate under a more stringent standard. Ultimately, the plaintiffs may be wrong about the COVID-19 vaccine, but they should be given a chance to challenge the government's assertions about it.

I respectfully dissent in part.

\* \* \* \*

When the mRNA-based COVID-19 vaccines were first announced in late 2020, pharmaceutical companies touted clinical trials that they claimed showed an efficacy rate of over 90 percent.[2] As scientists contended then, these

---

[1] I agree with the majority that this appeal is not moot.

[2] *Pfizer and BioNTech Announce Vaccine Candidate Against COVID-19 Achieved Success in First Interim Analysis from Phase 3 Study*, Pfizer, https://www.pfizer.com/news/press-release/press-release-detail/pfizer-and-biontech-announce-vaccine-candidate-against (Nov. 9,

vaccines would "protect individuals from infection and transmission."[3]

Based in part on these trial results, federal, state and local governments acted swiftly to impose vaccine mandates. The United States government required federal employees, government contractors, and millions of private sector employees to be vaccinated.[4] Over 8,000 men and women in uniform were discharged and severed from service for their refusal to be vaccinated.[5] States also imposed their own mandates. Even 18 months into the pandemic, California Governor Gavin Newsom announced that he planned to require schoolchildren to be vaccinated, despite scientific evidence that showed young children face extremely low

---

2020); *Moderna's COVID-19 Vaccine Candidate Meets its Primary Efficacy Endpoint in the First Interim Analysis of the Phase 3 COVE Study*, Moderna, https://investors.modernatx.com/news/news-details/2020/Modernas-COVID-19-Vaccine-Candidate-Meets-its-Primary-Efficacy-Endpoint-in-the-First-Interim-Analysis-of-the-Phase-3-COVE-Study/default.aspx (Nov. 16, 2020).

[3] Ali Pormohammad et al., *Efficacy and Safety of COVID-19 Vaccines: A Systematic Review and Meta-Analysis of Randomized Clinical Trials*, 9 Vaccines 1, 15 (2021), https://pmc.ncbi.nlm.nih.gov/articles/PMC8148145/.

[4] *See, e.g.*, Kathryn Watson et al., *Biden announces COVID-19 vaccine mandates that will affect 100 million Americans*, CBS News (Sept. 10, 2021), https://www.cbsnews.com/live-updates/biden-covid-19-vaccine-mandates-announcement/.

[5] *Fact Sheet: President Donald J. Trump Reinstates Service Members Discharged for Refusing the COVID Vaccine*, The White House, https://www.whitehouse.gov/fact-sheets/2025/01/fact-sheet-president-donald-j-trump-reinstates-service-members-discharged-for-refusing-the-covid-vaccine/ (Jan. 27, 2025).

health risks from COVID-19.[6]    That proposed mandate would have banned unvaccinated children from the classroom and relegated them to online learning.   And relevant here, LAUSD issued a memorandum requiring all employees to get vaccinated—or lose their jobs.

But it turned out that the government—and the scientific establishment—were wrong about a lot of things.   The COVID-19 vaccines did not end up having an efficacy rate of over 90 percent in real-life.   People repeatedly caught COVID-19, despite being vaccinated and "boosted." Indeed, repeat infections among the vaccinated became so common that the phrase "breakthrough infection" entered common parlance.   Given this reality, the government shifted its emphasis on why people should get vaccinated:  It was less about preventing transmission and contraction of COVID-19 and more about mitigating serious symptoms.[7] Even LAUSD in its brief before the three-judge panel focused largely on the vaccine's effect in lessening symptoms, stating that "[t]he overwhelming consensus amongst the nation's leading health experts is that COVID-

---

[6] California Becomes First State in Nation to Announce COVID-19 Vaccine Requirements for Schools, *Governor Gavin Newsom*, https://www.gov.ca.gov/2021/10/01/california-becomes-first-state-in-nation-to-announce-covid-19-vaccine-requirements-for-schools/    (last visited May 28, 2025).   California ultimately walked away from this announced policy.

[7] *See    Benefits    of    Getting    Vaccinated*,    CDC, https://www.cdc.gov/covid/vaccines/benefits.html#:~:text=Vaccination %20is%20more%20reliable%20way,associated%20with%20COVID% 2D19%20infection., (Jan 13, 2025) (emphasizing that "Getting vaccinated against COVID-19 has many benefits that are supported by scientific studies.  The COVID-19 vaccine helps protect you from severe illness, hospitalization, and death.").

19 vaccines are safe and effective in preventing serious illness and death from this highly contagious virus."

The plaintiffs here go further and contend that the COVID-19 vaccine is not even a "traditional" vaccine that prevents transmission or provides immunity. Rather, the COVID-19 vaccines merely mitigate symptoms in a manner more akin to a medical treatment than a vaccine. Thus, according to the plaintiffs, the Supreme Court's *Jacobson v. Massachusetts* decision does not apply here. The district court, for its part, held that the plaintiffs' "distinction" between "lessen[ing] the severity of the disease" and "prevent[ing] contraction or transmission" was "misplaced" and that *Jacobson* applies even if requiring the COVID-19 vaccines constitutes forced medical treatment. *Health Freedom Def. Fund v. Reilly*, 2022 WL 5442479, at *5 (C.D. Cal. Sept. 2, 2022).

The majority reads *Jacobson* broadly to empower the government to impose any vaccine mandate so long as it believes the mandate would "protect public health and safety." Maj. Op. 23. Under the majority's reading, "alleged scientific uncertainty over a vaccine's efficacy is irrelevant under *Jacobson*." *Id.* In other words, if the government believes a vaccine will protect "public health and safety," that is the end of the story. The majority adopts a sweeping definition of "public health and safety" such that the government can mandate a vaccine—and potentially any medical treatment—if the required measure just "lessen[s] the severity of symptoms," whether or not it prevents transmission and contraction of the disease. *Id.*

I disagree with the majority's overly broad reading of *Jacobson*. The Supreme Court upheld Massachusetts' vaccine requirement against smallpox precisely because the

vaccine prevented the transmission and contraction of smallpox.  It emphasized this point repeatedly:

- The "principle of vaccination as a means to *prevent the spread* of smallpox has been enforced in many [S]tates."  197 U.S. at 31–32 (emphasis added).

- "[V]accination strongly tends to *prevent the transmission or spread* of this disease."  *Id.* at 34 (quoting *Viemeister v. White,* 179 N.Y. 235, 72 N.E. 97, 98–99 (1904) (emphasis added)).

- It is "common belief" that a vaccine has a "decided tendency to *prevent the spread* of this fearful disease."  *Id.* at 34 (emphasis added).

- Quarantine requirements were justified because of "the danger of the *spread of the disease*."  *Id.* at 29 (emphasis added).

To be sure, the Court in *Jacobson* noted that the defendant had challenged the effectiveness of the smallpox vaccine in limiting the spread of the disease.  *Id.* at 23–24. The majority opinion latches onto that language to argue that it does not matter whether a vaccine limits transmission and contraction of a disease; we must just defer to a state's belief that a vaccine will protect "public health and safety."  Maj. Op. 23.  But the Court did not hold that vaccines can be required even if they do not prevent the transmission and contraction of the disease.

Admittedly, it is somewhat difficult to parse this 120-year-old case because it predates our tiers-of-scrutiny

analysis.    But I read the Court's opinion much more narrowly than the majority does:  If "everybody knows . . . and therefore the [trial] court judicially knew, as th[e] [C]ourt knows, that an opposite theory [about the public-health efficacy of the smallpox vaccine] accords with the common belief, and is maintained by high medical authority," Jacobson's argument that this overwhelming consensus was not unanimous does not amount to a viable constitutional claim.  *Jacobson*, 197 U.S. at 30.  While it acknowledged that some people shared Jacobson's distinctly unorthodox belief, the Court noted that it is "common belief" that is "accepted by the mass of the people, as well as by most members of the medical profession" that the smallpox vaccine has the "decided tendency to prevent the spread" of disease.    *Id.* at 34 (quoting *Viemeister*'s upholding of a smallpox vaccine mandate in New York); *see also id.* at 35 ("vaccination, as a means of protecting a community against smallpox, finds strong support in the experience of this and other countries"); *id*. at 37 (suggesting that there is "deep and universal" belief in the "community" and "medical advisers" about the vaccine's efficacy).    *Jacobson* then recited the number of states—and countries ranging from Britain to Denmark to Germany to Sweden—that have adopted compulsory smallpox vaccination, underscoring the common and almost universal belief that smallpox vaccines prevent the spread of that disease.  *Id.* at 31 n.1.

Our case is factually different from *Jacobson*.  At the pleading stage, we must accept as true the plaintiffs' well-pleaded allegation that the newly developed mRNA COVID-19 vaccines do not effectively prevent the transmission and contraction of COVID-19 and thus more resemble medical treatments than the sort of robustly validated smallpox vaccine at issue in *Jacobson*.  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). That allegation may ultimately not bear out once the parties offer evidence, but the plaintiffs' theory appears plausible at this stage, especially given the federal government's focus on mitigation of symptoms over prevention of transmission and LAUSD's failure in its brief to try to factually rebut that claim. This means that *Jacobson* does not bar this suit—at least for now.

The majority opinion suggests that *Jacobson*'s reference to "public health and public safety" is so capacious that merely "lessen[ing] the severity of symptoms" is enough to justify a vaccine mandate. Maj. Op. 23. But nothing in *Jacobson* hints that just mitigating symptoms alone can count as "public health and public safety." The entire thrust of *Jacobson* is that "*public* health and *public* safety" means protecting the mass public from the spread of smallpox. Aside from the repeated references to "preventing the spread" of smallpox, the opinion makes many allusions to the dangers of widespread transmission of the disease among the public. *See, e.g.*, 197 U.S. at 26 (mentioning the "injury that may be done to others" if a person has the liberty to refuse vaccines); *id*. at 27 ("a community has the right to protect itself against an epidemic of disease which threatens the safety of its members"); *id*. at 28 (noting smallpox was "prevalent and increasing at Cambridge"); *id*. at 30–31 (vaccination is the "best known[] way in which to meet and suppress the evils of a smallpox epidemic that imperiled an entire population"); *id.* at 31 (discussing the need to "stamp out the disease of smallpox" for the "protection of the public health and the public safety").

If we accept the majority's holding that a state can impose a vaccine mandate just to "lessen the severity of symptoms" of sick persons—without considering whether it

lessens transmission and contraction of this disease—then we are opening the door for compulsory medical treatment against people's wishes. Vaccines, by definition, build immunity and prevent transmission and contraction of an infectious disease, but we risk blurring the line between vaccines and medical treatment if vaccines are defined as anything that lessens symptoms.

None of this is to deny that the COVID-19 vaccines may well have saved millions of lives of the elderly, people with comorbidities, and others with weakened immune systems. But we have held that the government cannot compel people to involuntarily receive even life-saving medical treatment. If lessening the severity of symptoms alone justifies vaccine mandates, then it may well implicate the fundamental right to "refus[e] unwanted medical treatment," as explained by Judge Collins in his panel concurrence. *Health Freedom Def. Fund v. Carvalho*, 104 F.4th 715, 728 (9th Cir. 2024) (Collins, J., concurring), *vacated*, 127 F.4th 750 (9th Cir. 2025); *see also Cruzan ex rel. Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278–79 (1990); *Washington v. Glucksberg*, 521 U.S. 702, 724–25 (1997) (holding that the "right of a competent individual to refuse medical treatment" is "entirely consistent with this Nation's history and constitutional traditions" (citation omitted)). Indeed, under the majority's reasoning, we are only a step or two from allowing the government to require COVID-19 patients to take, say, Ivermectin if the government in its judgment believes that it would "lessen the severity of symptoms."

As a practical matter, I fear we are giving the government a blank check to foist health treatment mandates on the people—despite its checkered track record—when we should be imposing a check against the government's incursion into our liberties.

I respectfully dissent in part.